### PEOPLE v. DUDENHAUSEN.

(Supreme Court, Appellate Division, First Department. March 5, 1909.)

1. CRIMINAL LAW (§ 369*)—EVIDENCE—OTHER CRIMES.

While evidence of the commission of other crimes is not admissible to establish defendant's guilt of the crime under investigation, yet evidence which tends to prove defendant guilty of the crime for which he is indicted is not rendered inadmissible because it also tends to prove him guilty of other crimes.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822–824; Dec. Dig. § 369.*]

2. CRIMINAL LAW (§ 371*)—EVIDENCE—INTENT OR MOTIVE.

Where there is a question of intent or motive to be proved, facts showing the condition of accused's mind at or about the time the crime was committed is evidence, whether such facts would or would not tend to convict him of another crime, and the same rule applies to proof of any other fact which was admissible to prove the crime charged.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830–832; Dec. Dig. § 371.*]

3. CRIMINAL LAW (§ 372*)—EVIDENCE.

Under Public Health Law (Laws 1893, p. 1547, c. 661, as amended by Laws 1895, p. 258, c. 398) § 153, providing that any person who shall practice medicine under a false or assumed name, or who shall falsely personate another practitioner of a like or different name, shall be guilty of a felony, each act by which one physician personates another constitutes a separate crime, and where the indictment charged a practicing of medicine with a particular individual on a particular date under a false name, and there was no charge that defendant habitually practiced medicine under an assumed name or at any time except that specified in the indictment and in relation to the person there named, evidence that accused had at other times and places and under such false name advised or treated other persons was inadmissible, even though accused had publicly advertised as a physician under such name.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 833, 834; Dec. Dig. § 372.*]

Clarke and Scott, JJ., dissenting.

Appeal from Court of General Sessions, New York County.

Francis J. Dudenhausen was convicted of practicing medicine under a false name in violation of Public Health Law, § 153, and appeals. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thos. S. Morgan, Jr., for appellant.
Robert C. Taylor, for the People.

INGRAHAM, J. Section 153 of the public health law (chapter 661, p. 1547, Laws 1893, as amended by chapter 398, p. 258, Laws 1895) provides that:

"Any person who shall practice medicine under a false or assumed name, or who shall falsely personate another practitioner of a like or different name, * * * shall be guilty of a felony."

The indictment alleges that the defendant had been convicted at the Court of Special Sessions of practicing medicine without lawful authorization and registration; and then, as and for a second offense, the indictment alleges that the defendant having been theretofore convicted of the unlawful practice of medicine afterwards, to wit, on the 26th of February, 1906, in the city and county of New York, "did practice medicine under a false and assumed name, to wit, the name Dr. Dale, by then and there under such false and assumed name, feloniously examining, treating, and prescribing for one Eliza Howard as a physician."

Upon the trial Eliza Howard was called as a witness and testified: That on February 26, 1906, she went to the residence of the defendant; that the name "Dr. Dale" was on the door bell and a "Dr. Dale" sign in the window; that she rang the bell and a woman opened the door; that she asked for Dr. Dale, and was told that he was busy, but that he would see the witness in a minute; that subsequently the defendant came into the room and said he was Dr. Dale; that the defendant then examined her, advised her that she was pregnant, but that he could treat her; that his charge would be $25; that the witness replied that she was not prepared to pay the money that morning, and the defendant said to come the next day at 11 o'clock. No money was paid, no prescription given, and no operation performed. The people then called one Josephine Cook, who testified that on the 14th of February, eight days prior to the interview with the former witness and the date specified in the indictment, she called at the defendant's residence. She was then asked if after she had gone into the parlor the defendant appeared at any time. That was objected to on the ground that it was another offense and was not competent under the indictment. The court overruled the objection, and defendant excepted, and the witness testified to an interview with the defendant in which he stated that he was Dr. Dale and examined and advised her. The people then called one Frances Benzecry, who testified that on the 11th of December, 1905, over two months prior to the date specified in the indictment, she called upon the defendant and was allowed to testify to an interview at that date. Upon this testimony the people rested.

The defendant then took the stand and positively denied the testimony of these three witnesses, or that he had ever had any interview with either of them, and he was corroborated by the woman in the house who had opened the door. The defendant further testified that Dr. Dale had resided in this house and practiced there, but being in

bad health had a few months before gone South for the winter; that defendant had always practiced under his own name, and it was conceded that he was a duly registered and licensed physician entitled to practice medicine in the county of New York.

The indictment charged a practicing of medicine with a particular individual on a particular date under a false name. There is no charge in the indictment that the defendant habitually practiced medicine under an assumed name, or at any time, except that specified in the indictment and in relation to the person there named. The defendant is charged with this one specific offense. If that act was a crime, his relations to the other two witnesses, one more than two months prior to the crime charged in the indictment and one eight days before, were each specific crimes for which the defendant could have been indicted and punished. These three offenses had no relation to each other, and the two offenses not named in the indictment could have no possible bearing upon the defendant's guilt in relation to the offense charged, except the presumption that, if a person had been engaged in practicing under an assumed name with two other persons, it was probable that he was guilty of practicing medicine with the person named in the indictment. The statute prohibits any person from falsely personating another practitioner of a like or different name, and, if this evidence was accepted by the jury, the defendant did personate Dr. Dale at three distinct dates. Each act by which one physician personates another constitutes a separate crime. If a physician personates another practitioner one month, and two months afterwards personates another or the same practitioner, he has committed two offenses, and the commission of one crime has no relation to or bearing upon the other. The testimony as to instances other than that specified in the indictment at which the defendant had practiced under the name of Dr. Dale was of a character to have influenced the jury, and if the evidence was not competent the defendant is entitled to a new trial. The people seek to make this evidence competent upon the ground that the defendant was advertising that he was practicing under the name of Dr. Dale, and this was sufficient to link separate acts together and make them one transaction and the product of one general scheme. The witnesses testified that when the advertisement was shown to him the defendant said that it was his advertisement, and, assuming that by this advertisement the defendant invited all women to come and consult him, he was not indicted for generally practicing under it, but for "examining, treating, and prescribing for one Eliza Howard as a physician" on February 26, 1906. There was no scheme to defraud, of which the act charged in the indictment was a part, and the intent of the defendant was not an essential element of the crime.

The exceptions to the general rule that in order to prove the guilt of a person charged with a crime it is not permitted to show his former character or to prove his guilt of other crimes are stated in People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193. The only one of those subdivisions there stated under which the district attorney claims this evidence admissible is the fourth exception, under which evidence of other crimes is competent when it tends to establish "a common scheme or plan, embracing the commission of two or more

crimes, so related to each other that proof of the one tends to establish the other," and the three persons with whom the defendant committed these three separate crimes were so connected because it appeared that each of the persons presented to the defendant the same advertisement and stated that they had come to him in consequence of it. But this claim, it seems to me, entirely misconceives the object of the exception. In discussing this exception the court said, at page 305 of 168 N. Y., at page 299 of 61 N. E. (62 L. R. A. 193):

"It sometimes happens that two or more crimes are committed by the same person in pursuance of a single design or under circumstances which render it impossible to prove one without proving all. To bring a case within this exception to the general rule which excludes proof of extraneous crimes, there must be evidence of system between the offense on trial and the one sought to be introduced. They must be connected as parts of a general and composite plan or scheme, or they must be so related to each other as to show a common motive or intent running through both. * * * Some connection between the crimes must be shown to have existed in fact and in the mind of the actor, uniting them for the accomplishment of a common purpose, before such evidence can be received."

Judging the exception as thus explained, it seems to me clear that this case does not fall within it. These three witnesses who waited on the defendant for the purpose of medical treatment had no connection with each other. The defendant had no common purpose in relation to these three women. Each act was separate and distinct, and each act constituted a separate and distinct crime for which the defendant could have been indicted, and each crime must be proved by testimony tending to establish that it was committed and not proved by evidence that the defendant had committed other crimes distinct from the one charged. The advertisement was not an element of the crime charged. It was not that defendant advertised to practice that was a violation of the statute, but that he actually practiced medicine at the time and place and with the person specified in the indictment.

The district attorney cites the case of Reg. v. Rhodes (1899) 1 Q. B. Div. 77. In that case Lord Russell said that the prosecution was that the prisoner was not carrying on a real business, but from first to last a bogus or assumed business, and then continued:

"If the prosecution merely alleged isolated transactions of a fraudulent character against the prisoner with no connection between them, I should certainly say that evidence of transactions which took place after the offense charged was not admissible."

But such evidence was held admissible on the ground that it showed part of a scheme to defraud by the pretense of carrying on an honest and bona fide business, and that the transactions in all three cases were therefore connected by the advertisement which formed a part of the scheme. In this case there is no charge of a scheme to defraud or a bogus business, or that any one had been injured by the fraud or deceit of the defendant. He was indicted for violating a particular statute, which provides that personating another practicing physician was a crime. To prove the crime it was necessary to prove that the defendant personated another practitioner, and the indictment alleged that that was what the defendant did. To prove that he did practice medicine by prescribing for a person named in the indictment on a par-

ticular day named was not a part of a scheme the successful accomplishment of which the defendant was indicted for, but for violating the statute by doing the specific act charged in the indictment. Considering the question broadly, it seems to me that the real test is that evidence of the commission of other crimes is not admissible to establish the defendant's guilt of the one under investigation, yet evidence which directly tends to prove the defendant guilty of the crime for which he is indicted is not rendered inadmissible because of the fact that it also tends to prove him guilty of other crimes. Where there is a question of intent or motive to be proved, facts showing the condition of the prisoner's mind at or about the time the crime was committed is evidence whether or not such facts would or would not tend to convict the defendant of another crime, and the same would apply to the proof of any other fact which was admissible to prove the crime charged; but where the crime charged is a violation of a particular statute, where the guilt depends upon a particular act which the statute prohibits at a particular time and place, the fact that at other times and other places or with other persons the prisoner had repeated the offense, certainly has no probative force to determine whether or not the particular act charged was committed.

Without passing upon any of the other questions in this case, I think for this reason the judgment must be reversed, and a new trial granted.

McLAUGHLIN and LAUGHLIN, JJ., concur.

CLARKE, J. I dissent. The statute under which the defendant was indicted, section 143, of the public health law (chapter 661, p. 1547, Laws 1893, as amended by chapter 398, p. 258, Laws 1895), provides as follows:

"Any person who shall practice medicine under a false or assumed name, or who shall falsely personate another practitioner of a like or different name, shall be guilty of a felony."

While it is true that the indictment alleges a specific offense upon a specified day and with a specified person, the gravamen of the charge is the practicing of medicine under a false or assumed name, or the falsely personating another practitioner. It seems to me that the advertisement in the public prints over the name of "Dr. Dale," as practicing at the office where defendant was found answering to said name and examining and disagnosing the condition of the complainant and offering treatment for a price, permitted evidence of other like transactions. The continued advertisement in the papers, inviting various persons to the same office for medical treatment by the same man, under the same impersonation, furnishes a connection between the various occasions which permits evidence thereof upon the ground of a common intent and design; the offense charged being the fraudulent practicing of medicine.

Practicing medicine under a false name is a fraud denounced by the statute. In Reg. v. Rhoades, 1 Q. B. Div. 177, Rhoades was convicted of obtaining eggs by false pretenses. He had advertised for newly laid eggs in the country newspapers, giving no name except that of Nor-

folk Dairy Farm. It was shown that he had no right to this name. Subsequent transactions to that testified to by the complainant, under similar conditions, had been admitted in evidence. Lord Russell, C. J., considering the admissibility of this evidence, said:

"That depends, as it seems to me, on the question whether or not the case put forward for the prosecution was that the prisoner was not carrying on a real business, but * * * from first to last a bogus or sham business. * * * I think that the evidence was admissible on the ground that it showed part of a scheme to defraud by the pretense of carrying on an honest and bona fide business. The means by which the fraud was perpetrated was by advertisements in newspapers, which B. and E. and C. alike saw and alike acted upon. The transactions in all three cases were therefore connected by the advertisement which formed part of the scheme."

Wills, J., said:

"But when it appears that the same advertisement continued to appear down to the last transaction, and that it operated in the last case exactly as it did in the case on which the charge was based, then, as it seems to me, both in law and in common sense the evidence becomes admissible."

What the statute seeks to prevent is fraudulent impersonation of a medical practitioner. I think the evidence admissible because it tended to show such fraudulent impersonation continuing over a period of time. The like transactions were bound together by the advertisements during that period for which the defendant was responsible.

I think the judgment should be affirmed. ·

SCOTT, J., concurs.